and everybody I understand that needs to be here is present. So I think we can go ahead and start the arguments. It is has everybody been able to hear me fine? Yes. All right, great. Tony Johnson, then you can go ahead and unmute yourself. Go ahead and begin. Thank you. Yes. Good morning, ma'am, please the court Council Council Ronald Jones for the defendant pellet Miguel Oscar V. I'd like to reserve three minutes for the rebuttal. This appeal presents one now legal question may law enforcement. Sees a vehicle without a warrant from the curlies of a private home as forfeitable property. When none of the few, well, defy exception to the warrant requirement applies. In 1992 in the United States versus Santa, this court answered this question. No, that holding has never been overruled, not by the court sitting inbox or not by the Supreme Court. The district court held. Otherwise, it concluded that Florida versus white totally abrogated Santa, but white was a public parking lot case. The Supreme Court arrested his decision part expressly. And in addition to the automobile exception rationale on the fact that the seizure took place in a public area, and therefore was no invasion of privacy. Why is the now holding that only permits asset forfeitures in public places on the section of the statute. This is confirmed by Gaskins Jones in the fifth circuit cases, Trent versus way, because each of these cases explained the white holding and all three specifically indicated white only permitted such seizures from public places. Hence, the Santa, which specifically prohibits such seizures when that vehicle is located on the person resident driver remains good law as white does not discuss the season of such items from residential driving the plain language of white also makes it clear. The whole is now the limited seizures from public places. Attorney Johnson, can I ask a question. One of the things that I think may distinguish this case from the Santa is that while the vehicle was on private property. Police were essentially licensed to go on to private property by virtue of the warrants, even though the warrants didn't specifically authorized seizure of these vehicles. Can you talk a little bit about how that affects the analysis. Or maybe position is it doesn't but why why wouldn't it. I believe it's our argument that the fact that this case is, it is the same as the Santa. If you look at the neutral magistrate was just pause for a second there Mr Johnson just on that specific point the Santa involved in arrest warrant. And so the arrest warrant in the Santa gave the officers, the sort of all the traditional sort of plain view and arms reach and all of that license as judge Robinson used or authorization. This was a search warrant. In this case, specific to not only inside the house, but the external property as well. That's a much broader authorization than the arrest warrant in the Santa. So if you could address that specifically, I'd appreciate it. I would just like this, Your Honor. If you look at it was a rest warrant and a search and it was to search warrants. It was a search warrant for the commercial property would listen to vehicles. And then there was a search warrant for the, the, the, the house. And my client's car was was there on the residence, and that the government authority brought the tow truck, and I, I will submit that they have probable cause for fit of a property, but I don't believe they have probable cause in terms of the seas. And I will add is that the Santa, in my opinion, is a bright line rule. I don't, I don't believe that in this particular case, that the facts gives the government a blank check to just say, hey, we're going to arrest you. But why isn't white effectively saying that if the, if the officers are lawfully in a place that they, they then can seize the property for forfeiture, because there is no 4th amendment problem. And that's true because it's in a parking lot or on the street, but it's also true if they are lawfully in the spot where they, they were in this case where, where they were in the, in the driveway lawfully in the driveway, because they had a, had a warrant for the, for the house. They didn't have a warrant for, for the vehicle specifically, but the fact that they didn't have a warrant, if they hadn't had any warrants for those certainly not operating on the basis of the warrant for the business. So this is a warrantless case, except for you have a warrant for the, for the house, which means that they're lawfully in the cartilage. And once they're lawfully in the cartilage, it seems to me that at that point, they can see something that's in plain view. And if they have probable cause. Well, once again, Your Honor, I think this is what the court in LaSanta was up against. I'm saying that the Supreme Court's decision all but overturned LaSanta. It altered the picture because it wasn't so much a public private distinction. It was whether the officers, whether there was an expectation of privacy and whether the officers were lawfully were in a spot where they could, they could seize the vehicle, either because it was public or because it was in a cartilage that they were lawfully in. Well, I would direct the court to this court's analysis in Gaskin, where it was a similar situation where the circuit indicated and differentiated from a public and private residence. And also in my brief, also talk about the case, this court case, United States versus Jones, where Judge Shea indicates certainly is not binding, but the analysis is still the same that the distinction between private and public. And I believe here that if you look at the language that Justice Thomas articulated in white, it basically says the Supreme Court state texting that warrant was unnecessary because the seizure did not involve any invasion of respondents' privacy. I would say that this was an invasion of the respondents' privacy, even though it was on, even if he's on the cartilage. Where was it an invasion? No, I don't see where the invasion occurred because he was, they were lawfully in the cartilage. Well, bringing the tow truck, they brought the tow truck, they seized it. I think that was the invasion right there. I believe that was the trespasser. So the tow truck makes the difference.  Okay. The government asserts that you forfeited any argument that the seized vehicles were in the cartilage. Can you just respond to that? But I believe, Your Honor, if we look at Florida versus Jardines, I think that, you know, that Supreme Court case, in my opinion, allows us to make that argument. So I ask the court to be guided by Florida versus Jardines. I know I'm over my time, Your Honor, by 38 seconds, but I'll leave it up to the court. Okay, well, we'll have an opportunity to hear from you again. Thank you, Your Honor, and I'll go on mute. All right, thank you. Now we'll hear from Attorney Clark. Good morning. May it please the court. I am Assistant United States Attorney Lauren Clark for the appellee, and I also represented the United States in the case below. Here, the district court properly denied Mr. Acevedo's motion to suppress the warrantless seizure of his blue minivan and did so on sound legal grounds. Ms. Clark, let me just cut, if I'm, I apologize for interrupting, but I'm curious why the warrant for the body, the auto shop, listed vehicles within its scope for seizure, but the one for the house did not. Why not? And why doesn't, why isn't that a difference that matters here? And why not get a warrant? Your Honor, great questions. The first, the auto body shop was exactly what I said. It was an auto body shop. It contained a number of vehicles that in the affidavit applying for the search warrants and the arrest warrant outlined the potential use of those vehicles within the auto body shop to store narcotics. And so that was the specific reason to ensure that it was going to be captured in that search of the garage. The residence was different in that we did not specifically identify vehicles there as hopefully the court can appreciate. There's sometimes vehicles are moving. They are not unlike the auto body shop where we knew a number of vehicles would always remain. It was not entirely clear what vehicles may be at Mr. Acevedo's residence at any given time. And as the court can hopefully appreciate, seizing them as forfeiture was the basis for the seizure, not because we believed that they would contain some type of evidence at the time. So they were not contemplated specifically by the search of the residence, but in addressing whether or not. So forfeiture is the only available you wouldn't have, you didn't argue in the alternative that they're, they're an instrumentality of the crimes in plain view. I suggested in my briefing to the district court that there could be a basis for that. I did not brief it in earnest. I relied predominantly on the forfeiture, the forfeitable nature of the property, because that candidly was the decision made at the time of the search warrant of the residence. So, so Lasanta relied on or talked about, which they ultimately rejected the exigency exception to the automobile search, the ability to search on an automobile, the automobile warrant, and that they found that there was no exigency. Is this a forfeiture search case, forfeiture seizure case completely, or is there an automobile exception aspect to this? There is an automobile aspect, and I look to Florida v. White, which took the automobile exception where there was a belief or probable cause to believe that the vehicle could contain some type of contraband. And in Florida v. White, the Supreme Court acknowledged that the vehicle itself could be contraband. And so we talk about the vehicle as forfeitable property itself. As contraband, not just the proceeds.  But also the proceeds.  I'm trying to understand the, I wasn't entirely clear from your brief what the limits are on the sort of abrogation of Lasanta's from Florida v. White in your view. So your view is that Florida v. White says the auto exception would apply to forfeiture of a vehicle. That was in a public setting. But is your position that it also applies on private property without regard to the presence of a warrant, or is it the presence of the warrant that makes the difference here? It is absolutely the presence of the warrant that makes a difference here. I think in each of these decisions, the court is considering two different and separate spheres of privacy rights. There is the sphere of Fourth Amendment protections around the vehicle itself. And then there is a separate sphere of protection around the property on which that vehicle sits. And in this case, Judge Dooley analyzed both privacy rights to determine that there was not a situation which I think the Supreme Court pushed back in in Collins v. Virginia. And it's echoed in other instances where it's not just the vehicle seizure, but the lawful right of access to that vehicle. So let me poke at that a little bit. And I'm thinking a little bit of Jardim's. Let's think about a car that's parked right adjacent to the pathway to the front door. And the police don't have a warrant, but they're privileged. Anybody can walk up and knock on the front door. That gets them right up to the edge of the car. Why isn't, on your view, that enough to say, well, if the car is parked in the pathway to the front door, they have a right of access. And therefore, on my sort of view of the scope of Florida v. White, they could take the car. They could seize the car without a warrant. Well, I certainly could attempt that argument. I think that would fall very heavily on the facts. Perhaps if law enforcement had another basis to enter that property, exigent circumstances, they are pursuing an individual into that property who has just committed a crime, there may be additional exceptions. But out of an abundance of caution, certainly what's happening here in Acevedo, the investigators were on that curtilage solely because there had been a search warrant issued by a federal judge for them to be lawfully present. There could be circumstances, I suspect, where the government would argue that going up a walkway, perhaps in the same route that a postal inspector may take to deliver mail, could be a more public place or at least perhaps has less of a privacy right than other portions of the house or the residents. That depends on whether such a walkway up to the door is inside or outside the curtilage. And, you know, one thinks of a curtilage as being a courtyard sort of initially. That was, I think, the British conception of it. But curtilage now can be expanded to cover, I guess, driveways and so forth. But that's not what we have here. You're relying on the access. They had access because they were lawfully located where they were when they seized the car. Yes, Your Honor, that is the distinction. The warrant included the surrounding property, including the driveways, didn't it? It did. Yes. Sorry, please go ahead. I was just going to ask about LaSanta, whether you think we need to decide whether it's abrogated in the extent of abrogation or whether it's distinguishable because this is a search warrant right of access as opposed to an arrest warrant coupled with Florida v. White. Do you think we need to decide abrogation? I think it couldn't hurt if the court's position continues to be, as the prior case law suggests, that it was abrogated by Florida v. White. But what LaSanta seems to get wrong, for lack of a better word, is the scope of the automobile exception. LaSanta does not really discuss the invasion of private property. It focuses certainly squarely on that sphere of protections around the vehicle itself. And as the court has acknowledged, as Florida v. White found, it speaks of the automobile exception as if there's an exigency requirement. It seems to me LaSanta is responding to a very maximal argument by the government. The government's saying it's forfeitable property by statute. Nothing else matters. You don't want us to say that's right, do you? No, Your Honor. OK, so there's something specific we're saying, and the Second Circuit said no to that. So that's not fully abrogated. That's still not. That is to say, it's not the case that simply because it's forfeitable, that alone is a basis for the seizure. Correct. And the statute also recognizes that there must be a lawful arrest, a search, or another exception to the Fourth Amendment warrant requirement. And so the statute itself acknowledges that separate from seizing the vehicle itself, there may be other property interests for the court to consider before determining whether or not suppression is warranted. And I think Judge Dooley did that. And so for these reasons, obviously, I'm happy to answer any other questions that you may have. I do have a question. I do have a question, and that is whether or not the Supreme Court addressed LaSanta in its white decision. And in effect, it referred to it, I believe. I don't know that it rejected it or said it was a bad law, but it either distinguished it or it said that it diminished the force of LaSanta. But I don't know that it actually abrogated it. Can you elaborate on that a little bit? I can, Your Honor. So the Supreme Court discussed LaSanta in the context of the vehicle, the automobile exception to the vehicle requirement. So not the fact of public versus private property, but it spoke about the exigency not being required. Yeah. Right. We've cited LaSanta in opinions subsequent to white. I guess I'm just kind of coming back to the question of whether we really need to come down strongly on a conclusion as to the abrogation and extent of abrogation. To the extent that we have, I'm looking at United States versus COSME, for example, which was a 2015 decision by our court that cites aspects of LaSanta without sort of questioning its continuing vitality. Once you conclude that there's been abrogation, then that has implications potentially for other cases that relied on it and like. There are two ways to do it, I think. One is whether or not we would say that LaSanta was abrogated or whether or not we would, if we were going to fine for the government, we would send it, do an M-Bank or a mini M-Bank to reinforce that. So one of the things I'd like to poke at a little bit more, because on your view, although you haven't ruled out the possibility that there are other bases on which the government might have access to the property on which the car is parked, that would be enough to trigger the auto exception for purposes of the seizure. You really are relying on the warrant here, and on the one hand, the warrant is a search warrant, and it does allow them to be in this space. On the other hand, we have this specificity requirement with warrants, and they're going to be things that fall within the general residual language in a warrant, and there's going to be plain view things. But I'm struggling with the notion that an automobile, and an automobile that's believed to be seizable as forfeitable, is that that access is encompassed within the warrant or facilitated by the warrant, despite the fact that the warrant doesn't mention the automobile. And is there some other case I can look at that sort of would give me some comfort on that? So, United States versus Navas, which is a 2010 decision by the Second Circuit, I thought was instructive on this point, not because there had been an authorized search warrant for the garage warehouse that was being used by the defendant, but the defendant consented to a search of that facility. And I think in that sense, the Second Circuit has gotten very close to acknowledging that there can be a warrantless forfeiture, a seizure for forfeitable purposes or for evidentiary purposes, even where there was not specific consent by the defendant to seize a particular vehicle. This was also one of the few cases that I could find where the court was considering the intrusion upon a person's property, in that the garage in this case was, there was a property interest by the defendant who then consented. The facts there were that law enforcement went in, there was a trailer that had what appeared to be a trap in the trailer and narcotics were found inside of that trap in the trailer that was in the garage that was being maintained by the defendant. And I think in that case, you do have, again, the acknowledgement that there are two separate spheres of privacy interests that are being invaded or being accessed by law enforcement, and each one was sufficient. I also think that, and I know I'm over time, so if the court wishes me to conclude, I can. I want to talk a little more or ask you a little bit more because the notion that Florida v. White abrogates, it sort of opens the doors as widely as we're talking about here. And I'm looking at the decision itself and there's a lengthy discussion about the broader latitude that law enforcement officials enjoy in public places. And the conclusion is because the police seized respondent's vehicle from a public area, the warrantless seizure did not involve any invasion of respondent's privacy. We therefore conclude that the Fourth Amendment did not require a warrant. Would you concede at a minimum that this case goes beyond, this would require us to sort of push the analysis beyond what Florida v. White dealt with, which was seizure in a public lot or in a non-private lot? It does in that the court would have to find that the Supreme Court's use of public actually means where there was no lawful right of access. Those have to be synonymous. Or where there was a lawful right, public is where there was a lawful right of access. So I believe that in discussing the lawful, the fact that it was public property in Florida v. White, the court is acknowledging that a second part of the analysis is not just as to the vehicle itself, but also any other invasion of privacy here. There was none. And the court acknowledged that because it was public space. But that only follows if the use of the term public is understood to mean where there has been no encroachment upon a person's Fourth Amendment rights. And I think Judge Shea lists a number of cases in United States v. Jones where public property, it's not just public property. He lists a number of cases in other circuits which have upheld warrantless seizures on private property where that particular defendant had no privacy interests. So, for example, property that belonged to another person. That defendant that's claiming that the evidence was suppressed in violation of their Fourth Amendment rights wouldn't have a right to privacy on this other person's private property. Right, but there's no, you're not disputing that he has a right to privacy here relying on a warrant that essentially allows the officers to impinge on that to the extent authorized by the warrant. Absolutely. That was the central part of the analysis here. Not just that they could seize the vehicle, but they were lawfully present at that residence pursuant to a federal warrant to access the vehicle in the first instance. What if the vehicle was parked right up at the edge of the property line and you could actually get that hook under the bumper to tow it away without setting foot on the property? Fair game? Not in my office, but that is very tricky because the vehicle itself remains somewhat on property. And I would caution my colleagues and agents that they should consider a warrant. That's great, but I want to figure out not what your well-considered discretion would do, but what you think the Constitution would allow. I'm trying to understand the expanse of the position you're taking because it seems quite broad to me. I think that in Collins v. Virginia, I think the Supreme Court plays it out very clearly. It talks about trespass. And just simply looking at whether or not in accessing a vehicle on private property, there's any evidence of trespass. And not knowing the details of trespass laws, I would suspect that even if it was 10 feet away, I'm standing on a public sidewalk, but the vehicle is 10 feet in, clearly visible to me, that that could be considered an encroachment upon property where the defendant has a privacy interest. And there was a trespass in Collins. Yes. Yeah. Right. Yes. That was in the curtilage without a warrant, without any justification.  Yeah. And so this is different. Yeah. Exactly. In that respect. All right. I think unless, does anybody have any further questions? No. All right. Then let's hear. We've got, I think, three minutes rebuttal from Attorney Johnson. Yes, Your Honor. In light of the question that was raised, it's still our position that the government had a limited license on the property to search and seize this vehicle. And based on particularly that was articulated warrant by Judge Garcia, those fields were not written in that particular warrant. It's our position is that Mr. Oscar Beto had a privacy right. It was on his property. And that the case that was cited are all in public places. And we believe that LaSanta wasn't totally abrogated. It's our position that this particular case is factually the same as LaSanta. And we ask that the court reverse the district court judge decision and remand it back down. Well, let me just, we say it's factually the same as LaSanta. Like, there is a difference in the nature of the warrant, right? Is your view that that's just legally irrelevant in terms of the scope of the authority that the officers have to be where the car is? Well, I believe in terms of there was arrest warrant, there was a search warrant, but the search warrant was based on forfeitable seizure. But you have to, the court has to balance the constitutionality of Section 881 for my client's constitutional rights. If in that search warrant, the magistrate had the information. As a neutral magistrate, she had the information. And she did not give the government the authority to seize that vehicle, to bring the tow truck to seize that vehicle. It's our position that based on the magistrate decision that the government had a limited authority in this particular instance. Did the government ask for that authority? I can't answer that. But all I can infer is that the fact that in the original warrant on the commercial property, there certainly was a vehicle listed. And based on the chronology of the case, there's information that the agents and the officer did view that particular house. They view where Mr. Oscar Bader lived. So clearly, they had some type of information. But what is clear, what is uncontroverted that in that particular warrant, the neutral magistrate did not give probable cause to search that particular vehicle. In fact, even though they didn't give probable cause, I believe based on the facts of the case that they did in fact search the vehicle. They didn't find any contraband in the vehicle before they told it. No, they found it later in.  Right. Yes, they did. And actually, they just it's not relevant really to the to what we're discussing. But they had a warrant at that time. Well, I will argue that that's if if the poison is true. Yes. Yeah, I know. I understand that. And I think you're right. Maybe right on that one. The government didn't pursue this argument. But I'm curious what your response would be to the to the contention that the tip about the trap that led to the warrant to do the later search wasn't actually that didn't flow from the seizure in the first instance. What's your response to the argument that that's an independent basis for the search that sort of breaks the causal chain on the fruit of the poisonous tree argument? Well, I think in terms of I think it's the independent source for after the fact, I do believe that is our opinion that even though the tip may have happened after the contamination and Tain had already already occurred. Well, but if the car had still been sitting in the driveway, would that tip not have had the same effect? I don't know if I can really answer that your honor in terms of I don't think I can answer that. I'll be speculating on that. Well, there wouldn't have been an unlawful seizure at that point. Yeah. You're from your perspective. Right. Right. All right. I think we have your unless you unless you have anything further. I think we have your argument in hand. Anything further for my colleagues. Just say I appreciate the arguments of both counsel. Thank you counsel. Yeah, thank you both. We appreciate it. And with that, we will we will take it under advisement, and we'll ask the with with gratitude to the courtroom deputy ask her to adjourn the proceedings.